**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Jenna Richert,

Plaintiff,

v.

LaBelle HomeHealth Care Service LLC, et al.,

Defendants.

Case No. 2:16-cv-437

Judge Graham

Opinion and Order

Plaintiff Jenna Richert brings this putative collective action for overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 207, against her employer, defendant LaBelle HomeHealth Care Service LLC. The suit concerns the "Home Care Final Rule," a rule promulgated by the United States Department of Labor in 2013 to extend wage and overtime protections to home care workers. This matter is before the Court on plaintiff's motion to conditionally certify a FLSA collective action, defendant's motion for partial judgment on the pleadings and plaintiff's motion to equitably toll the statute of limitations.

**I. Background**

Plaintiff has been employed by LaBelle as a home health aide in Ohio since August 2014. She alleges that she regularly works more than 40 hours per week. She further alleges that LaBelle employs approximately 50 additional home health aides who work in excess of 40 hours per week. The complaint asserts that LaBelle has not paid plaintiff or members of the proposed class the overtime compensation to which they are allegedly entitled under the Final Rule. See 29 C.F.R. §552.109(a).

In her motion to conditionally certify a FLSA collective action, plaintiff proposes that the class include all home health aides employed by LaBelle from January 1, 2015 to the present who were not paid overtime wages during all or part of their employment. Plaintiff contends that the class period should begin on January 1, 2015 because the Department of Labor gave the Final Rule an effective date of January 1, 2015. See 78 FR 60454-01.

Defendant does not dispute that conditional certification is appropriate, but it argues that as a matter of law the Final Rule did not take effect until October 13, 2015. Defendant cites the legal

challenge to the Final Rule brought in the United States District Court for the District of Columbia, Home Care Ass'n of Am. v. Weil, 76 F.Supp.3d 138 (D.D.C. 2014). The District Court vacated the Final Rule, concluding that it was in conflict with the FLSA. On appeal, the D.C. Circuit reversed the district court's vacatur of the Final Rule. Home Care Ass'n of Am. v. Weil, 799 F.3d 1084 (D.C. Cir. 2015) (concluding that the new rule was a reasonable interpretation of the FLSA and was neither arbitrary nor capricious). The D.C. Circuit's mandate issued on October 13, 2015; thus, defendant argues in its motion for partial judgment on the pleadings that plaintiff and the proposed class cannot maintain a FLSA claim for violations which occurred prior to October 13, 2015.

## II. Discussion

The motion to conditionally certify and the motion for partial judgment on the pleadings present the same question: whether recovery for unpaid overtime under the Final Rule should begin with alleged violations occurring on January 1, 2015 or should be limited to the period after October 13, 2015.

No circuit court of appeals has addressed the issue, but a majority of district courts that have addressed this question have held that January 1, 2015 is the effective date of the Final Rule. In Kinkead v. Humana, Inc., 206 F.Supp.3d 751 (D. Conn. 2016), the court began its analysis by noting that a district court's vacatur of an agency rule "'restores the status quo before the invalid rule took effect.'" Id. at 754 (quoting Environmental. Def. v. Leavitt, 329 F.Supp.2d 55, 64 (D.D.C. 2004)). However, the court found that under the principle of retroactive application of judicial decisions, the court of appeal's reversal of the vacatur in Weil meant that the Final Rule took effect on January 1, 2015:

> In light of the fact that the district court vacated the new rule, it is not surprising that defendants refrained from paying overtime to plaintiff while the district court's decision remained valid. But, of course, the district court ruling was promptly challenged in the D.C. Circuit, and the real question here is whether the D.C. Circuit's subsequent reversal of the district court's vacatur means that defendants became liable to pay plaintiff overtime for the periods that she worked while the district court's decision had been in effect. The answer to this question follows from the well-established rule that judicial decisions are presumptively retroactive in their effect and operation. The ruling of the Supreme Court or of a federal court of appeals within its geographical jurisdiction "is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); see also Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 758–59, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) (re-affirming Harper

> and rejecting authority of a court absent "special circumstances" to circumvent retroactive application of a judicial decision by means of invoking its remedial discretion).
>
> Despite defendants' arguments that they relied on the district court's decision, any such reliance would not justify a non-retroactive application of the D.C. Circuit's ruling. See Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 215 (2d Cir. 2010) (noting that the Supreme Court has identified only two classes of cases in the qualified immunity and habeas corpus contexts "that may justify suspending the ordinary presumption in favor of retroactivity" of judicial decisions); Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91 & n. 7 (2d Cir. 2009) (despite fact that "the parties relied on [prior overruled decision] when structuring their transactions, the Supreme Court has held that a reliance interest is insufficient to overcome the presumption of retroactivity set forth in Harper").

Kinkead, 206 F.Supp. 3d at 754.

Many courts have followed the reasoning and result of Kincaid. See Evans v. Caregivers, Inc., No. 3:17-CV-0402, 2017 WL 2212977, at *4 (M.D. Tenn. May 19, 2017) (surveying the case law and concluding, "This court is likewise persuaded by the reasoning in Kinkead and finds that the effective date of the new rule is January 1, 2015."). In Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y, 215 F.Supp.3d 805, 810 (S.D. Iowa 2016), the court agreed with Kincaid and added, "This case presents nothing out of the ordinary when it comes to the authority of a Court of Appeals to render null and void decisions of the district court with which it disagrees. Indeed, it strikes the Court as far more 'unfair' to allow Defendant to escape liability for nearly a year's worth of overtime wages based on a district court decision that was ultimately deemed to be error." Id. at 810. And recently a judge of this Court adhered to the general rule that "judicial decisions are applied retroactively" and held: "In light of the Weil ruling's retroactive application, this Court finds that the enforceability of the DOL regulations at issue in this case is applied retroactively as well, and that their effective date is January 1, 2015." Dillow v. Home Care Network, Inc., No. 1:16-CV-612, 2017 WL 749196, at *3 (S.D. Ohio Feb. 27, 2017).

Other courts have reached the same holding. See Hypolite v. Health Care Servs. of New York Inc., No. 16-CV-04922, 2017 WL 2712947, at *4 (S.D.N.Y. June 23, 2017) (observing that the "overwhelming majority of well-reasoned opinions" have concluded that January 1, 2015 is the effective date of the Final Rule); Collins v. DKL Ventures, LLC, 215 F.Supp.3d 1059, 1066 (D. Colo. 2016) ("[T]his Court declines to declare that Weil has only prospective effect. . . . Typically, fully prospective application requires, at a minimum, that the new rule of law is 'unanticipated' or 'an issue of first impression whose resolution was not clearly foreshadowed.'") (quoting U.S. v. Johnson,

457 U.S. 537, 550 (1982)); Guerrero v. Moral Home Servs., Inc., __ F.Supp.3d __, No. 16-23051-CIV, 2017 WL 1155885, at *3 (S.D. Fla. Mar. 27, 2017) (rejecting the argument that employer's alleged reliance on the district court's vacatur in Weil justified a prospective application of the circuit court's reversal); Cummings v. Bost, Inc., 218 F.Supp.3d 978, 986-87 (W.D. Ark. 2016).

A handful of cases have held that the Final Rule did not take effect until October 13, 2015. In Sanchez v. Caregivers Staffing Servs., Inc., No. 1:15-CV-01579, 2017 WL 380912, at *2-3 (E.D. Va. Jan. 26, 2017), the court briefly reasoned that the Final Rule became a "legal nullity" when the D.C. district court vacated it and did not become effective again until the D.C. Circuit's mandate. The court did not acknowledge the case law to the contrary.

In Lee v. Caregivers for Indep., LLC, No. 1:16-cv-946, 2017 WL 2666413 (S.D. Ohio June 21, 2017), another judge of this District Court further developed the legal nullity theory stated in Sanchez. The Court reasoned that retroactive application of a judicial decision was suitable for "a new interpretation of a law already in effect" but not for "a substantive regulation which had never before been in effect." 2017 WL 2666413 at *5. The court found that because the district court in Weil vacated the Final Rule before January 1, 2015, "the sequence of events created a legal nullity which prevented the Regulation from ever taking effect until the D.C. Circuit issued its mandate on October 13, 2015." Id. The court's analysis relied heavily on MCI Telcoms. Corp. v. GTE Northwest. Inc., 41 F.Supp.2d 1157 (D. Or. 1999), in which the court declined to apply the Federal Communications Commission regulations from their original effective date because the "court perceive[d] a crucial distinction between applying a new interpretation of a law that admittedly was in effect during the relevant time period, versus applying a substantive regulation that never was in effect to begin with." Id. at 1163.

Here, defendant makes the same argument based on MCI. This Court, however, is not persuaded by that reasoning, as the court in Hypolite explained:

> The distinction drawn by MCI, however, has been rejected by the Court of Appeals for the Ninth Circuit and the Court of Appeals for the Fourth Circuit, which each held that the FCC rules at issue took effect as of the date originally scheduled notwithstanding the initial, though erroneous, stay and vacatur orders. See US W. Commc'ns, Inc. v. Jennings, 304 F.3d 950, 956-58 (9th Cir. 2002) (reversing U.S. W. Commc'ns, Inc. v. Jennings, 46 F.Supp.2d 1004, 1009 (D. Ariz. 1999), which had relied on MCI for the proposition that the FCC regulations did not take effect until the stay and vacatur orders were reversed); GTE S., Inc. v. Morrison, 199 F.3d 733, 740-41 (4th Cir. 1999) ("[T]he Supreme Court's determination that the FCC has jurisdiction to issue pricing rules would appear to compel the conclusion that the FCC always had such jurisdiction and that the rules apply as of the effective date originally scheduled."). MCI is therefore not persuasive.

Hypolite, 2017 WL 2712947, at *6.

This Court agrees with Kincaid, Hypolite, Lewis-Ramsey and Dillow that under the principle of retroactive application of judicial decisions, see Harper, 509 U.S. at 97, the D.C. Circuit's reversal of the district court's vacatur in Weil means that the Final Rule has an effective date of January 1, 2015. The Court further finds that the purpose of the FLSA, "as a statute designed to protect individual rights" and which "'must not be interpreted or applied in a narrow, grudging manner,'" Herman v. Fabri-Centers of Am., Inc., 308 F.3d 580, 585 (6th Cir. 2002) (quoting Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944)), would be thwarted if the legal error of the district court in Weil caused employees protected by the FLSA to be unable to recover for over ten months of overtime wages.

## III. Conditional Certification

A collective action under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing[.]" 29 U.S.C. § 216(b). In order to join a collective action, an employee must (1) be "similarly situated" to the plaintiff who maintains the action, and (2) give his written consent to join. Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).

As noted above, defendant does not oppose conditional certification. The Court finds that plaintiff has satisfied the fairly lenient standard for conditional certification. Plaintiff must "make a modest factual showing" that is she similarly situated to the other employees she is seeking to notify. Comer, 454 F.3d at 546-47 (internal quotation marks and citations omitted). "[P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." O'Brien v. Ed Donnelly Enter., Inc., 575 F.3d 567, 585 (6th Cir. 2009). Here, plaintiff alleges that she and other home health aides employed by LaBelle have worked in excess of 40 hours per work but have not been paid overtime wages since the Final Rule went into effect. The motion for conditional certification is supported by the affidavit of plaintiff and attached payment records. Plaintiff attests that she and other individuals who were employed as home health aides by LaBelle performed the same primary work duties and had the same compensation structure. Richert Aff. at ¶¶ 6-7. She further attests that she and other home health aides of whom she was aware have regularly worked more than 40 hours but have not been paid overtime wages by LaBelle. She asserts

that LaBelle's failure to pay overtime wages is pursuant to a company policy to pay home health aides their regular hourly wages for overtime hours worked. Id. at ¶¶ 9-13.

The Court therefore grants conditional certification of a collective action by a class defined as all persons employed as a home health aide by LaBelle HomeHealth Care Service LLC at any time from January 1, 2015 through the present who worked more than 40 hours per week but were not paid overtime wages.

The Court further approves plaintiff's proposed Opt-In Notice and Consent Form, finding that they appear to be "timely, accurate, and informative." Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 172 (1989). The Notice informs potential class members of the pendency of the action and accurately describes the plaintiff's legal claim and states that the employer is defending against the claim. The Notice informs potential class members of their rights and provides clear instructions on how to opt in. It accurately states that retaliation and discrimination for participation in an FLSA action are prohibited by law. See 29 U.S.C. § 215(a)(3). The Notice correctly describes the legal effects of joining or not joining the suit, and it advises that the Court expresses no opinion regarding the merits of the plaintiff's claim or the defendant's defenses.

Finally, plaintiff requests that defendant be ordered to produce a list of names and contact information of all persons within the proposed class. Defendant has no objection to providing the information. Thus, defendant shall supply the information necessary to effectuate notice to plaintiff's counsel within 30 days from the date of this Order.

## IV. Equitable Tolling

### A. Background

A two-year statute of limitations applies to FLSA claims for unpaid compensation, except that claims for willful violations have a three-year statute of limitations. 29 U.S.C. § 255(a). A claim accrues on the date on which payment is owed, such that each paycheck which fails to include owed wages constitutes a separate violation. "Thus, a new cause of action accrues with the receipt of each paycheck." Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd., 246 F.Supp.2d 886, 902 (S.D. Ohio 2003). The claim of a named plaintiff in a collective action is considered to be filed on the date the complaint is filed and she files a written consent to join the collective action. 29 U.S.C. § 256(a).

The filing of the complaint does not serve as the filing date for unnamed plaintiffs in a collective action. The claim of an individual not named in the complaint is not considered to be

filed until she files a written consent. 29 U.S.C. § 256(b). Congress chose not to automatically toll the limitations period for such individuals even though the opt-in mechanism of the FLSA "necessarily involves some lapse of time between the date a collective action is commenced and the date that each opt-in plaintiff files his or her consent form." Baden–Winterwood v. Life Time Fitness, 484 F.Supp.2d 822, 826 (S.D. Ohio 2007); see also Grayson v. K Mart Corp., 79 F.3d 1086, 1106 (11th Cir. 1996) (stating that Congress decided that "an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint").

Equitable tolling is available for FLSA claims. See Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 187-88 (6th Cir. 2008). It is determined on a case-by-case basis, but should be applied sparingly. Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998). Equitable tolling is generally reserved for situations "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." Graham-Humphreys, 209 F.3d at 561-62 (citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984)) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

Courts typically consider the following five factors to in determining whether equitable tolling should apply: 1) plaintiff's lack of notice of the filing requirement; 2) plaintiff's lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's legal rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim. Andrews v. Orr, 851 F.2d 146, 151 (6th Cir. 1988). These factors are not comprehensive, nor are all of the factors necessarily relevant in every case. See Allen v. Yukins, 366 F.3d 396, 401 (6th Cir. 2004). [1]

---

[1] In an unpublished opinion, the Sixth Circuit stated that the Andrews test was no longer applicable, at least in the context of a petition for writ habeas corpus. Patterson v. Lafler, 455 Fed. App'x 606, 609 n.1 (6th Cir. 2012). The court said that a two-factor test should instead be used: (1) whether petitioner diligently pursued his rights, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Id. (citing Holland v. Florida, 560 U.S. 631, 649 (2010)).

Even so, district courts in the Sixth Circuit have continued to use the Andrews test in determining whether to equitably toll FLSA claims. See e.g., In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig., No. 14-MD-02504, 2014 WL 3695750, at *2 (W.D. Ky. July 24, 2014) ("This Court is disinclined to substitute the reasoning from an unpublished opinion for a well-established, published one. Regardless, whether one applies the five-factor or

**B. Discussion**

Plaintiff requests that the claims of all unnamed class members be tolled until the date on which they file their consent to join the lawsuit. According to plaintiff, the parties engaged in good faith efforts to reach an agreement regarding conditional certification but were unable to do so. This resulted in the motion to conditionally certify being filed in December 2016, a few weeks before two years had passed since the effective date of the Home Care Final Rule. Plaintiff contends that the unnamed class members are unaware of this suit and that she has been diligently pursuing the rights of the class.

Defendant responds that a blanket application of equitable tolling in favor of potential class members would be premature and would violate the principles that equitable tolling be used sparingly and on a case-by-case basis. In support, defendant cites several cases in which judges of this Court have declined to apply equitable tolling in circumstances indistinguishable from the case at hand. See Atkinson v. TeleTech Holdings, Inc., No. 3:14-CV-253, 2015 WL 853234 (S.D. Ohio Feb. 26, 2015); Fenley v. Wood Grp. Mustang, Inc., 170 F.Supp.3d 1063 (S.D. Ohio 2016); Lemmon v. Harry & David Operations, Inc., No. 2:15-CV-779, 2016 WL 234854, at *1 (S.D. Ohio Jan. 20, 2016).

In Atkinson, the court identified several difficulties of examining a pre-certification motion for equitable tolling in a FLSA collective action:

> In contrast to a class action lawsuit brought under Federal Rule of Civil Procedure 23, the named plaintiffs in an FLSA collective action do not represent anyone other than themselves. Accordingly, the named plaintiffs have no authority to move to equitably toll the claims of the potential opt-in plaintiffs. See Jesiek v. Fire Pros, Inc., No. 1:09–cv–123, 2011 WL 2457311, at **1-2 (W.D. Mich. June 16, 2011) (holding that a motion for equitable tolling, purporting to seek relief on behalf of plaintiffs who had not yet appeared, was premature, given that named plaintiffs had no need for equitable tolling of their own claims, and had no personal interest in the outcome of the motion).
>
> Moreover, because the potential opt-in plaintiffs do not become parties to the lawsuit until they file their consent forms with the court, the court lacks jurisdiction to grant them equitable relief. See United States v. Cook, 795 F.2d 987, 994 (Fed. Cir. 1986) (holding that because potential opt-in plaintiffs in FLSA case were not yet before the court, the order purporting to toll the statute of limitations on their claims was an impermissible advisory opinion and must be vacated as prematurely issued).

---

two-factor test may not matter; the latter is like a shorthand version of the former."); Struck v. PNC Bank N.A., 931 F.Supp. 2d 842, 846 (S.D. Ohio 2013); Kampfer v. Fifth Third Bank, No. 3:14 CV 2849, 2016 WL 1110257, at *6 (N.D. Ohio Mar. 22, 2016).

Atkinson, 2015 WL 853234, at *8.

In addition, the court found that application of the five-factor Andrews test "to a group of potential opt-in plaintiffs, who have not yet received notice of the collective action and are not yet parties to the lawsuit, is convoluted at best." Id. at *9 (citing Noble v. Serco, Inc., No. 3:08–76–DCR, 2009 WL 3254143, at *3 (E.D. Ky. Oct.7, 2009) ("It would be inappropriate to attempt to apply the factors at this stage in the litigation because the Court does not yet know who the opt-in plaintiffs will be.")). And the court further found that "the doctrine of equitable tolling is an individualized inquiry, inappropriate for group consideration in the context of an FLSA collective action." Id. (citing cases).

In Fenley and Lemmon, the court adopted the approach taken in Atkinson. The court found that it was "not prepared to cast an extraordinary net extending the rights of putative plaintiffs when there [was] little to no specific information" about the circumstances of the potential opt-in FLSA plaintiffs. Fenley, 170 F.Supp.3d at 1077; Lemmon, 2016 WL 234854, at *8. Likewise, in In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig., No. 14-MD-02504, 2014 WL 3695750, at *3 (W.D. Ky. July 24, 2014), the court found that it would be "premature to grant blanket equitable tolling for plaintiffs who are currently hypothetical and have not yet come before this court. . . . [T]he Court does not yet possess knowledge sufficient to establish the diligence of all opt-in plaintiffs."

The Court finds the reasoning of Atkinson to be persuasive. It is true, as plaintiff notes, that other decisions from this District have granted equitable tolling to FLSA claims for all putative class members. See Engel v. Burlington Coat Factory Direct Corp., No. 1:11–CV–759, 2013 WL 5177184 (S.D. Ohio Sept. 12, 2013); Struck v. PNC Bank N.A., 931 F.Supp.2d 842 (S.D. Ohio 2013). The court in Fenley observed that those decisions appear to have been "decided in the interest of judicial expediency rather than strictly adhering to the 'case-by-case' approach" required by the Sixth Circuit. 170 F.Supp.3d at 107.

This Court presently lacks sufficient information to apply the Andrews factors. The Court finds that plaintiff has not met her burden of showing that the potential plaintiffs' failure to meet the deadline "unavoidably arose from circumstances beyond [their] control." Graham-Humphreys, 209 F.3d at 561-62.

**V. Conclusion**

Accordingly, plaintiff's motion for class certification (doc. 13) is GRANTED. Defendant's motion for partial judgment on the pleadings (doc. 14) is DENIED. Plaintiff's motion for equitable tolling (doc. 18) is DENIED without prejudice.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 29, 2017